Calvin JONES, Appellant,

v.

NORTH DAKOTA WORKERS COM-
PENSATION BUREAU, Appellee.

Civ. No. 900171.

Supreme Court of North Dakota.

Oct. 2, 1990.

Steven L. Latham (argued), of Wheeler Wolf, Bismarck, for appellant.

Hugh Patrick Seaworth (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

GIERKE, Justice.

Calvin Jones appealed from a district court judgment affirming an order of the Workers Compensation Bureau denying him medical benefits. We affirm.

On December 17, 1983, Jones injured his lower back while employed in the oil fields near Williston. Jones was treated by Dr. Ronald Wright, a chiropractor in Williston. Dr. Wright diagnosed Jones' injury as "thoracic strains and subluxation complexes initiating a thoracic radiculitis." The Bureau paid Jones' medical expenses for treatment by Dr. Wright in December 1983 and January 1984. On January 15, 1984, Dr. Wright reported that Jones was discharged from treatment and requested that Jones' claim be closed.

In April 1984, Dr. Wright notified the Bureau that Jones had reinjured his back using a sledge hammer at work. Dr. Wright treated Jones' back from March through April of 1984, and the Bureau paid for those treatments. On May 15, 1984, Dr. Wright reported that Jones was released from treatment and requested that Jones' claim be closed.

Jones returned to Dr. Wright for additional treatments for his back in February, March, and November 1985. Dr. Wright reported that "we did not relate [those treatments] to the previous injury." Jones testified that Dr. Wright told him that bills for those treatments should not be submitted to the Bureau because the treatments were not related to the work injury, and Jones paid for those treatments him-

self. Jones testified that he moved to Colorado in late 1985 and was treated by a chiropractor on two or three occasions in 1985 and 1986 in Commerce City, Colorado. Jones paid for those treatments, but he did not remember the chiropractor's name.

In 1987, Jones moved to Minnesota and was treated by Dr. David Stussy on May 19, 1988. Jones completed a report on November 17, 1988, stating that his back symptoms had been the same for several years and that when he first saw Dr. Stussy his symptoms were worse because of heavy lifting at work. Dr. Stussy opined "that the current treatment that I am rendering is for the cure and relief of symptoms that directly related to his original 1983 low back injury" and "that there clearly is a causal relationship between his current symptoms and his old injury." Jones applied to the Bureau for benefits.

The Bureau retained Dr. Roy Ottinger, a chiropractor and diplomate in roentgenology, to review the records, x-rays, and notes of both Dr. Wright and Dr. Stussy. In a written report to the Bureau dated May 17, 1989, Dr. Ottinger concluded that it takes six months for a sprain or strain to heal, and since Jones did not seek care for his original injury for four years, the original strain would have healed. Dr. Ottinger further concluded that there was not substantial medical evidence to verify that Jones' recent problems were the result of his original injury and that it was highly improbable that he would have had a reoccurrence of that injury, or the pain associated with it, without severe trauma or several micro traumas to the area.

Based on Dr. Ottinger's opinion, the Bureau denied Jones' claim for benefits. Jones requested a rehearing. After the Bureau heard telephonic testimony from Jones, Dr. Stussy, and Dr. Ottinger, the Bureau affirmed its order denying further benefits, finding:

"The greater weight of the evidence, including in particular the records of Dr. Wright and the report and testimony of Dr. Ottinger, along with records of Dr. Stussy, does not indicate that claimant's current condition is causally related to his work injury in 1983. It is not likely, considering that claimant had only three treatments in 1985, and only two treatments in the period of time from November of 1985 to May of 1988, that claimant's condition in May of 1988 and thereafter is causally related to the 1983 work injury. Furthermore, medical records of Dr. Stussy, including in particular the written statement of the claimant, indicate that claimant attributed his symptoms in 1988 in large part to his work in Minnesota at that time. Finally, there is no support for Dr. Stussy's theory that he is able to determine that an injury of this sort is an old injury based upon an examination of x-rays."

■ Section 28–32–19, N.D.C.C., governs the scope of judicial review of the Bureau's decision in both the district court and in this court. *Perman v. North Dakota Workers Compensation Bureau*, 458 N.W.2d 484 (N.D.1990). Pursuant to Section 28–32–19, N.D.C.C., we affirm a Bureau decision unless its findings of fact are not supported by a preponderance of evidence, its conclusions of law are not sustained by the findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Id.* In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the Bureau. *Id.* Instead, we determine "only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979).

■ Jones contends that Dr. Stussy's opinion clearly established a causal relationship between his current condition and his 1983 work injury. Jones argues that the only contrary evidence, Dr. Ottinger's opinion, was made without the benefit of a complete orthopedic and neurological examination and was based upon a mistaken assumption that Jones had had no ongoing back problems or treatments since his ini-

tial injury. Jones asserts that the Bureau has offered no rational explanation for accepting Dr. Ottinger's opinion and rejecting Dr. Stussy's opinion.

Although Dr. Ottinger testified that he was not aware that Jones had continuing symptoms and treatments since 1983 and that knowledge would have had an effect on his opinion, he also testified:

"Q. Now, would that cause you, the fact that he did see a chiropractor and had two or three treatments in Colorado in that time, cause you to re-evaluate your opinion?

"A. No, I don't think so.

"Q. Okay.

"A. I feel that there's too much time has elapsed even in that time to go back to the original injury.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Based on anything you may know now, including the additional information you've learned, that the claimant did see a chiropractor in Colorado for an additional two or three treatments, anything else that you may have learned here today at this deposition, is there any reason, is there anything you've learned, that would cause you to change your opinion that you submitted to the Bureau in your letter of May 17 of 1989?

"A. No."

There is contradictory evidence about whether Jones' current condition is related to his back strain in 1983. Dr. Wright released Jones from treatment on May 15, 1984, and requested that Jones' claim be closed. Although Jones received three additional back treatments from Dr. Wright in 1985, Dr. Wright's notes indicate that he did not relate those treatments to the 1983 injury and Jones paid for those treatments himself. In 1988 Jones indicated that his back symptoms were worse because of heavy lifting at work at that time. Although Dr. Ottinger did not personally examine Jones, Dr. Ottinger's opinion was based upon his review of the records, x-rays, and notes of both Dr. Wright and Dr. Stussy. In particular Dr. Wright's failure to relate Jones' 1985 treatments to the 1983 injury supports Dr. Ottinger's opinion. Dr. Ottinger's opinion was also supported by Jones' statement attributing his 1988 symptoms to lifting at his job in Minnesota. In our view Dr. Ottinger's opinion and the records of Dr. Wright provide an adequate explanation for the Bureau's decision. We conclude that a reasoning mind reasonably could have determined that the Bureau's factual conclusions were proved by the weight of the evidence and that the Bureau's findings of fact are, therefore, supported by a preponderance of the evidence.

The district court judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ.